We will hear argument next in Case No. 25-1116, Surgent's Mechanical Systems v. U.S. or Sargent's? Surgent. Surgent, okay. Surgent's Mechanical Systems against U.S. If it pleases the Court, my name is Joe Whitcomb. I represent Surgent's Mechanical and its case against the United States of America and its appeal of its CDA claim, contract dispute act claim, at the Court of Federal Claims. Excuse me. The Court of Federal Claims ruled on summary judgment, presumably interpreting all of the evidence in favor of the non-movement, which was in this case Surgent, and found that the case was ripe for summary judgment and ruled that Surgent's CDA claim failed there. Surgent's primary position is this, that the government should not be allowed in this instance to, for lack of a better term, sandbag Surgent's Mechanical into, or lull Surgent's Mechanical into delaying the performance of the contract and then turn around and default Surgent in the performance of that contract, and then turn around and award the contract to a subsequent awardee and give the subsequent awardee the exact things that Surgent was asking for in its RFIs at the claim. So that's the crux of the underlying case. Now, the legal principles that the Court will obviously look at would be the difference between whether this was a latent or patent ambiguity in the underlying contract. Surgent's position is that the best... Right, so I understand, right, you do have a point about the diameter of the coils, and that's the one, just correct me when I'm wrong, in which there's a dispute about ambiguity, right? But the asbestos claim, which I think is the, I thought you agreed, was the only one that, if you're right about, could account for the whole of the, what is it, 114-day delay, seems like the heart of this. So, Your Honor, I looked back at the transcript. I wasn't actually present for the Cofcy hearing and that summer judgment hearing, but I believe what Mr. Sather was answering in that transcript is, wouldn't the asbestos claim basically account for the entire 114 days? And the answer to that question is unequivocally yes. The asbestos claim would, in fact, account for the... I'm thinking he was not conceding that the other claims likewise would account for that 114 days. We read the law, Your Honors, to mean that all of the delays are to be viewed in the aggregate and that the asbestos claim alone, or the delays related to the asbestos alone, were sufficient to consume or subsume the 114 days. But certainly the delays related, or certainly the warranty of specifications, for example, that certainly gives a surgeon leeway into its delays because of the point Your Honor just pointed out, which is the difference in diameter between... And I have it in my notes, but it's a difference of inches. Less than that, isn't it? It's a... And a half or five-eighths. Right. Yes, I have it again in my notes. But if the court, I think if I were forced to point the court to a single piece of evidence as it relates to the latent ambiguity, I would just point to Appendix 1417, which is early in the Volume 2, where the contracting staff are writing between each other and the contracting officer's representative, who I think identifies himself at 1417 as the contracting officer, Mr. Meehren, I think, M-E-H-R-E-N, states, I need some guidance here. And this was in March of 21. I need some guidance here because I don't know what to tell Surgeon unless I know what the contract requires. So that's at 1317. And interestingly, that is in response to another VA member stating, Surgeon says that more asbestos inspection is required, and I don't think that it is. That's all in 1317. And if you roll back a couple of pages to... I said 1417. I meant 1417. And if you roll back a couple of pages to 1415 and 1414, you see that Surgeon there, in a response to a noticed cure, on the heels of the government telling it, we will find this asbestos and we will let you know where this asbestos is, Surgeon submits an accelerated schedule, and the government rejects the accelerated schedule at 1415 for the reasons that it did not want to be subject to an accelerated schedule claim. And that's in 1415 and 1414. Well, how much of an accelerated schedule when it was proposing to complete the contract 192 days after the agreed upon deadline? At 1414. So at 1414, Your Honor, if you look there, there's a link to an accelerated schedule that we would have completed the contract on time. It was only after the contracting officer rejected the accelerated schedule that Surgeon submitted another schedule that agreed to complete 192 days after. So Surgeon's original accelerated schedule, and in fact, the contracting officer... You keep saying accelerated schedule, and I just am trying to understand what you mean by accelerated schedule. Are you saying that you submitted a schedule that would have completed the contract on time or even before the agreed upon completion date? Your Honor, before. So that is, again, that's at 1414. When was the completion date? It was supposed to be something like August 2021 or something like that? The original completion date was 364 days from... What's the date, August 2021? I haven't heard, Your Honor. August 17, 2021? August 17, 2021. Okay, so did you submit a proposed schedule to complete the contract before August 17, 2021? Yes, Your Honor. And the way they did and what that is... What is that in the record? That is at 1414, and that is a link in 1414. You proposed to complete the contract by what date? By the predetermined completion date, and that's at 1414. And that was in March of 2021. Well, that's August 17, 2021, right? So in 1417, Your Honor, I can look at my... I have to look at my appendix here. I'm trying to make sure I understand your conceptual of what an accelerated schedule is. An accelerated schedule, to me, would be you're proposing to complete the contract before August 17, 2021. And that is exactly our position, Your Honor. And it wasn't until... Let me find it. It's in Appendix Volume 2. And... One. That's three. Here's two. Yep. 1414. So this is in response to the notice to cure. And then in 14... And this was... I'm sorry. I misspoke when I said March. They submitted the accelerated schedule in February of 2021 with a plan to complete by August of 2021. On Appendix 1415, Mr. Meehan writes... Corey Meehan, I assume. I see you in 1414 requesting a 192-day time extension. And that says incorrectly through February 26. That can't be because the letter is dated February 26. So you're adding 192 days to February 26. Which I believe at the time was Surgeon's calculation at the time of the government's... At the government's cost delay at the time. So I misspoke earlier when I said it was going to complete by August. But it was... The agreement at the time, the meeting of the minds at the time when they submitted this document was that the time of the delay... Because, again, there's... Throughout the record, the government is telling Surgeon... And I have it here in my notes. That it will find the asbestos. And it needs more time to find the asbestos. And then it issues the notice to cure it. And Surgeon submits this... What it calls constructively... I'm sorry. It terms as an acceleration schedule. And then Mr. Meehan, the next day, says... See the highlighted verbiage in the submittal below. Read about constructive accelerated schedules. The basis of this term is an attempt to set us up for a constructive acceleration claim. So its rejection of that notice to cure was to avoid a constructive acceleration claim. Mr. Whitman, let me ask you. This case went off on summary judgment. Yes. The Court of Federal Claims. And I understand there's no dispute about the facts that are set forth in the opinion. Is that correct? You seem to be asking us now to go beyond the summary judgment. Really dig into the weeds and come up with some additional facts. Actually, Your Honor, respectfully, no. We don't concede that the facts that the Court advances in its summary judgment order are uncontested. For example, one of the focuses on... Well, there's two things. There's a factual dispute about whether or not Mr. Sather's concession in the court that the asbestos issue subsumes the entire case. We don't concede that issue. We think that's a mixed issue of fact and law. The second piece is a very salient legal issue, which is whether or not the incorporation of the OSHA clause is incorporated in the contract by virtue of the whole contract doctrine. And that is the 29 CFR section 1926.1101, which puts the onus... And if I need to say that slower, I can. But it was briefed excessively at the summary judgment stage that it was the owner, a.k.a. the Veterans Administration's responsibility to locate the asbestos. Also, there's the uncontested, which we believe that there's... And the claims court judge said that's just inconsistent with the contract. That's a contract interpretation point, basically, maybe even completely illegal interpretation. That is right. So, as this court has said many times, contract interpretation is reviewed de novo. That would fall uniquely into the purview of this court. The second issue, I think, which is a purely factual one that the court determined at the summary judgment stage that we do not concede, which was the issue of whether or not it was a patent or latent ambiguity issue, which is a subjective test. This should be reserved for the trial. Just to be clear, I think we talked about this right here in the beginning. The ambiguity issue, does that apply only to the pipe diameter issue or also to the asbestos? So, to both, Your Honor, on two different issues. So, the piping as to the diameter, and then the... So, the way the court interpreted the 800 linear feet was simply a suggestion. I think that's an issue of contract interpretation. Just remind me what the 800 linear feet is. So, the specifications instructed Surgent that there would be approximately 800 linear feet of asbestos. That number was not within, was not close to the actual amount of asbestos ultimately found in the building. Then the other piece is related to the number of elbows, which is also in the same specification, which is at... The specification itself is at... I have it here in my notes. I was so fluent a minute ago. Oh, yeah, there it is. The specification, well, there's two, 028211, and then in general abatement note 11, that's at appendix 464. And that is at number 11, and it's that super small text in the specifications. It says that there will be approximately 800 linear feet of asbestos. And that number turned out to be wrong by orders of magnitude. And then the other piece at 464, which is in volume one, talks about the number of elbows, which I think it says 26. And that ended up being also wrong by order of magnitude. Now, aren't there references there to so-called section 28211? And then when you look at section 28211, it makes it clear that surgeons is the asbestos abatement contractor that has full responsibility to get rid of all the asbestos. So, absolutely, Your Honor. As it relates to getting rid of all the identified asbestos that clearly fell to the contractor. This is where the 29 CFR comes into play, which is OSHA instructs that the government, and this is an OSHA regulation, and the contract incorporates all relevant regulations, which includes the OSHA regulation that says under 29 CFR 1926.1101K1, it says that the owner is responsible for identifying. If you were to affirm on the asbestos issues, does that end this case? Because the asbestos was a cause for at least all of the delay that's been identified here? So, we suggest no. So, the asbestos issue accounted for at least 114 days of the delay. I think it's all the way up through March of 2021, the asbestos issue. Why would that be the end of the case, then, that we wouldn't need to address the other arguments? Because there's also the issue of the ambiguity with regard to the diameter of the piping, which also caused difficulties. And again, the court would have to ignore, as again, this issue of tribal fact, which is that the government instructed Surgeant over and over again that it was looking for and would instruct Surgeant. So, Surgeant, in our view of the world, reasonably relied on the government's representations that it was going to alert Surgeant as to where the remaining asbestos was. Now, again, to the government, the government's anticipated argument was Surgeant was the contractor. They had a duty to find this asbestos. This asbestos, for a practical matter, was buried inside of walls. There is no walkthrough that would allow a contractor to dig into walls to find existing asbestos that's wrapping elbows around pipes that is inside a wall. So, to the idea that Surgeant would have been able to do all of this in advance is just contrary to the normal practice of construction inside of a building. This was not a bill designed or a design bill. This was going in and remediating the abatement of asbestos that existed behind walls. I know you're into your rebuttal time, but I just do want to understand something. Am I hearing correctly that you have maybe two different arguments about the VA's obligation in your submission to identify the asbestos, to find the asbestos? One is you think that that's what, first of all, you think that the contract does not disclaim any such obligation and assign it to you. Second, do I understand you to say the OSHA provision imposes the obligation on VA and also precludes it from assigning it to you in a contract? And third, that there were representations along the way by VA officials that they would find the asbestos, which once they find it, you would then have to abate. So, yes, I would have conflated those into two points. One is that Surgeant was precluded under OSHA standards, but it is charged with knowing. Surgeant is an accredited asbestos abatement contractor, so it would be charged with knowing what the OSHA standards and what OSHA requires. So Surgeant would have known going in that it can't go just rooting around. Even the process of looking for the asbestos would have required the removal of VA employees and things like that, so it would not have been able to do so willy-nilly on its own under the OSHA CFR. The second piece was, as Your Honor pointed out, it reasonably relied on the government's assertions that it was going to find – we will identify, we will let you know, and when we do, you can handle that. And what's the – assuming that you're – assume away your arguments except for the reasonable reliance on VA officials' representations, let's assume that the contract actually did require you to find VA asbestos, then what's the legal basis for your reasonable reliance argument? It must be something like, you know, a contract modification. Well, that was where I was going, Your Honor. Isn't that what Judge Solomonson said? It had to reach that standard and you can't get there. Well, I would suggest, Your Honor, that any writing from the contracting officer gets you there. It doesn't need to be an official form that reads contract modification. Any writing, a text message, an email gets you there, and there are many – there are many – I think what Judge Solomon would rely on is to say, well, look, the contract officer's representative is not sufficient to get there, but there are exchanges where there's a contracting officer that is telling – that is copied on, and that's – the case law suggests that that is sufficient if the contracting officer is copied on the exchange from the contracting officer's representative and doesn't chime in and say something else than the contracting – then that statement is attributable to the contracting officer's representative – or sorry, to the contracting officer. And in the instances where Mr. Meehan, like at 1417, which is the piece that I keep trying to refer to – That's the page with two emails. One of them is about – the bottom one is about testing for asbestos. I don't know if that is the same thing or different from finding it. And the top one is what? What's that about? So the top one is from the actual contracting officer, which is, I think, the strongest evidence. I'm sorry. Is it about pipes? I mean, pipe diameter? Or is it about asbestos? I can only infer from the email below that it's about asbestos because the email below is from the Corps to the contracting officer stating that yesterday Rick informed me that Sergeant – that's Rick, sir – was going to perform additional insulation testing for asbestos and they were going to send the bill to you. My position is that more asbestos testing is unnecessary. In response to that, the contracting officer says we have to come to an agreement or know exactly what the requirements are so that I can tell Sergeant what to do. At this point, I don't know. I, the contracting officer, don't know which direction I need to give him. Okay. That's what I have. Okay. If the Court has any more questions. This has gone well over – well into your rebuttal time. We'll restore that when it's here from the government. May it please the Court. The trial court correctly granted summary judgment in this case on undisputed facts, as your Honor noted, because as a matter of law, the VA's termination for default was proper. And I reiterate to your Honor's question before that this was on undisputed facts. There's now a contention that these facts should be disputed or should have been disputed, but what the trial court had before was undisputed facts. In getting to sort of the termination to default, which was established, we have the fact that Sergeant Canicle, in response to a cure notice, told the VA that it was not going to complete the contract within the actual contractual completion date, but needed more time. To your Honor's question about constructive acceleration, this argument presupposes that somehow VA changed the nature of the contract or the obligation, but that's not established anywhere. In fact, what Sergeant Canicle is asking this Court to do is sort of twist the constructive acceleration argument into something different, whereby they assume that the Court will convert their delays or impute them to the government. So there isn't really a constructive acceleration. To your Honor's direct questions, at no point did Sergeant Canicle say that they were going to complete before the actual contract completion date. What they were suggesting is that any delay that had occurred should be imputed to VA, and they should be given the time. But that gets to sort of the second point, your Honor. That's the point, I think, on which we were directed to the February 26, 2021 letter at Appendix 1413. Was that 1413, your Honor? Yeah. I think that's what we were pointed to in part. Yes, your Honor. And that's the one that seems to say, Sergeant hereby requests a 192-day time extension. It says through February 26. That can't be right. That's the date of the letter. But 192 plus February 26 is probably one to two weeks after the August 17th. It may have been, your Honor, but there was, as the facts show, there was a number of back and forth. After this February 26 letter from Surgeon, that's when I believe it was March 16, 2021, where VA actually sent the cure notice, giving surgeons the ability to say or provide VA with the assurances that they were actually going to complete. And then in March 22, 2021, and I apologize, your Honor, I don't have the specific pin site in the appendix handy. But in that March 22, 2021 response is where Surgeon made clear that they weren't going to complete the project until, I believe, December 9, 2021. And that is where the 114-day delay comes from. So the representations were made by Surgeon that they weren't going to complete until December. Now, Surgeon is arguing that any delay in the beginning should not be their fault, but should be imputed to the government. But there's no basis to do that because they've asserted three bases upon which potentially excusable delay could be found. But the trial court found, as a matter of law, none of these three bases actually can be satisfied. And the first is the asbestos issue, your Honor, and then the cooling coil issue. And then there was... Put aside the coils. Put aside the coils. So on the asbestos issue, the basis for Surgeon's contention that they should be afforded 114 days for delay is because somehow, somewhere, the actual obligation on Surgeon to identify and abate the asbestos was then moved back to VA. But that's not supported by anything. As the court has correctly noted, the contract itself makes clear in a number of places that it is Surgeon's responsibility to abate the asbestos here. Can you just point me to those? Appendix page 464, your Honor, has the general abatement notes. And in those, it says that the... And this is very small print, your Honor, and it's probably... How did I get to get there? 464. 464, your Honor. It is very small print, your Honor. I apologize. Oh, my goodness. It's... So if the court looks at that general abatement notes... Understood. So let... I'll just generally explain what those say. Those general abatement notes, your Honor... General is not going to be enough. This is why. When I read the claims court's opinion, I thought some of the quotes of the language, I think, hmm, does this really mean that? So the words really matter to me. Yes. So in the general abatement notes, it states that it is the contractor's responsibility to find and verify asbestos materials. In these general abatement notes, we also get where VA has provided the estimate of approximately 800 linear feet of material that may contain asbestos. And this is sort of the coverings on the elbows in various piping and some other duct work, and it was a total of 47 rooms. In appendix page 972, we have, as your Honor pointed to, specification 02-8211, and it does note in there that the estimated quantities are for informational purposes only. It does say there also that the contractor must satisfy itself with actual quantities of asbestos. And there was a site visit that they could have partaken of. Sergeant chose not to. What would they have done? What would they have done? They would have there at least done some sort of visual verification of what they saw. Mr. Whitcomb says most of this is inside walls. So this is not going to do us any good unless we get to bring our sledgehammers in, which we don't. Yes, Your Honor, but it was within Sergeant's ability and control to decide how they were going to do this. So they could have hired another survey company to do that, to find out where everything was to do the proper analysis that they say they were doing. If they are a certified abatement company, they know how to do this. What VA was providing— Just give me a hint of how you do that without the sledgehammer. I don't specifically know the details, Your Honor, because I've never done it. But what I know from the contract is VA— The only thing that comes to my mind is that somewhere inside the VA there are records and imprints of the original and all the changes of all of the duct and pipework that are inside there. There may have been, Your Honor. Understanding the court's point here. But VA also provided two surveys that it had done in the past identifying where the asbestos was. So VA gave Sergeant all the information it had, so these reports did contain further detail. If Sergeant believed this wasn't sufficient detail for them to fully understand where the asbestos was and how to abate it, they had the contractual obligation to do more, and they could have. The unfortunate reality for Sergeants in this case is they chose not to do anything else. They decided— Is it true that those prior reports turned out to be incomplete as to where all the asbestos actually is? The specific details, Your Honor, there may have been some issues there about the various materials. I think there was also some tiling and some adhesives that they were talking about. There may have been some— Because isn't that what this whole debate is about, that Sergeants didn't have all the information ahead of time of exactly where all the asbestos is located? Yes, you gave them reports that had done prior studies, but none of those turned out to be fully comprehensive. Even if that's true, Your Honor, VA in this contract provided no guarantee that it was identifying all asbestos. What it said it was going to do is provide the best information it had, but it was specifically hiring someone to abate the asbestos and telling them, this is the information we have. We've identified this. If there is more information needed, a certified asbestos abatement company should have undertaken whatever analysis they needed to do. Let me just, I guess, ask the question this way. What language— If all the language was, you're responsible for abating asbestos, I would want to know, well, what follows that? All the asbestos we have pointed to you, or all the asbestos in this building, and we'll help you figure that out, but it's your job to figure it out. What's the best, what's the language in the contract that best indicates it's all the asbestos that there is in the building or whatever it is, and you will be responsible, not just for getting rid of it or containing it or whatever abatement may involve in this situation, but also for finding it. Understood, Your Honor. And so if we go to appendix page 972, and this is within section 02-8211, and I'm specifically looking at section 1.1.2— Slow down. I apologize, Your Honor. The section titled, Extent of Work. This is readable typeface. Which one? We're looking at there's section 1.1.2, which states Extent of Work. And here it says, Below is a brief description of the estimated quantities of asbestos-containing materials to be abated. These quantities are for informational purposes only and are based on the best information available at the time of the specific preparation, specification preparation. The contractor shall satisfy himself as the actual quantities to be abated. Nothing in this section may be interpreted as limiting the extent of work otherwise required by this contract or related documents. So here, Sergeant is clearly on notice that it is fully their responsibility to identify all the asbestos and abate it. The sentence, the contractor shall satisfy himself as the actual quantities to be abated— Likely a typo. I would assume it should have said as to. What? As to. I believe we probably need to in there. But so, Your Honor, we have within the contract a clear— But what does satisfy also? Shall satisfy himself as to the actual quantities? Yes. That's clear enough to me. We've given you an estimate, but we might be wrong. You have to figure it out, and we're not on the hook for any error. This in connection with everything else in the contract, including those OSHA provisions, which required certain things to be done for abating the asbestos. So yes, Your Honor, the contract was clear that the burden of identifying and abating all the asbestos was being put on Sergeant here, wasn't being retained by VA. So the contract is unambiguous on this point. Now, getting to the secondary issue of Sergeant's argument that somehow the VA has taken this obligation back on itself, I would point the Court to— This is Appendix Site 2084. Just to point out myself, are you responding to the kinds of things that Mr. Whitcomb was saying about it was represented to us that don't you worry about it, we'll find it? Exactly, Your Honor. And sort of the secondary point that Your Honor raised, that there is no contract modification changing the obligations here. But if we look at, I believe it's Appendix Page 2084, and this was a request for information sent by Sergeant. I believe this was— This is Appendix Page what? 2084. And so here we have in the questions from Sergeant a number of things, but I think the most important thing to point out, sort of the second line there, we believe we have a handle on where the 800 linear feet of mastic are. Sergeant is saying, well, we understand. We've seen that. We've been able to figure that out.    Then they get down a little further and they ask, can you please tell us exactly where the 20 plus or minus elbows are located? So Sergeant, knowing it has the obligation to abate all asbestos, has now come back to VA and asked them specific questions to help them. Sergeant has chosen, instead of hiring some other company to assist them, to go back to VA. Now as a matter of contract administration here, the VA determined that, okay, we will just undertake another survey and see what additional information we can find. But the reason VA does that is in response to a direct question from its contractor. And VA recognizing, again, we're dealing with a hospital in Florida that is an operating functional hospital. VA has to do whatever it can to ensure that this construction project is completed on time. So if the contractor has asked them to do something, they've determined that, all right, we're going to let them have this. We're going to do this other survey. But the reality in VA, acceding to a question from Sergeant, who's trying to complete their obligation, can't be interpreted as any sort of contract modification, nor could it be a basis... Why not? I mean, I guess one of the things maybe what Mr. Whitcomb did say or might say is it's a little uncertain how to interpret what VA said. We will go and get you the information, whether that means... But that doesn't relieve you of the obligation to figure it out yourself. Or it could mean you don't need to worry about this yet. We are on the job. That's our reliance point. Why is that not at least a triable issue of fact? Because there's no dispute here that Sergeant specifically, instead of going out and doing its own work, Sergeant specifically asked VA to do this. It's undisputed that Sergeant has requested this and VA has, in addition... It seems to me a request is something that might be saying, you may have this information. Please let us know. And that doesn't tell me very much about whether it was saying it's now on you or it's not on you to identify this. Both are entirely plausible interpretations of a request from the building owner for more information. I understand the question. And then VA says, we'll go look for it. Again, why is that also not ambiguous about whether that means we're going to help you but you're still responsible versus, okay, we will do this and you can rely on us. There is an absence of any information within this record to show that in effectively updating reports that it had already provided through the solicitation period that VA is somehow affecting a contract modification. We don't have... And this is what the trial court found. We don't have any indication that VA is somehow actually formally modifying through a written change to the contract what the obligations were. So we know the contract was unambiguous on what Sergeant was required to do. The fact that we have one request here being complied with isn't enough to create an inference that VA is implicitly modifying the contract. We know how contract modifications would occur. We know that in this case, there is no written modification because there was no request. There was no formal representation in any manner, shape, or form by anyone from the VA to Sergeant saying that we are going to modify your obligation. So it just... It seems like too much of a jump, Your Honor, from this fact where VA... If I'm remembering right, I think Mr. Woodcombe adverted to, at least without perhaps naming, cases where modifications have been held to have occurred with a considerable degree of informality. So why is this not... A, are there such cases, and B, why is this not like them? There may be a case out there, Your Honor, where less than formal procedures are used. But what we do not have here is any statement convincing or even suggesting that VA is now going to lessen Sergeant's obligations under the contract. All we have is VA getting a request for more information. VA didn't have any more information at hand. So what did it do? It went out and obtained sort of an update to reports that it had already provided. So it gave more current information. Updating the information it had and that it had already provided can't be equated with an implicit agreement to modify the contract, because we don't have... Maybe even one could think of that as simply carrying out the implied duty of good faith and fair dealing to not obstruct the other side's performance of its obligations. We would agree with that, Your Honor. I see that I'm out of time unless the Court has further questions. Good. Thank you, Your Honors. We have just a few more minutes, Your Honor. So going back to Appendix 464, so there's been a lot of dialogue about this assumed... The word identify just doesn't exist in the contract. It just doesn't. I mean, it is at best read in. The contract actually states in Paragraph 1 of 464, contractors shall remove all asbestos-containing, asbestos-contaminated materials indicated in these general notes, specifications and as shown on drawings, and dispose of as asbestos waste. In the next paragraph, contractors shall be responsible for field verifying the existing quantities and conditions of asbestos-containing and asbestos-contaminated materials and immediately notify the COTR, the C-O-T-R, in writing of any discrepancies found. How could it possibly... Any of that language, or the language that counsel read to you from 964, that it must satisfy itself, mean it impose upon sergeant a duty to do something that the contract articulates never. The contract is... I mean, the court found, as a matter of law, that the contract imposed upon sergeant the responsibility of identifying a word that the contract does not use at all. It simply says to... It must field... It must field verify and it must satisfy itself as to the quantities. The point the court just made. Now, as it relates to the thing I was fumbling around before, and that's at 1408. And I'll find it, I believe that's in one. And that is where there's not just an implicit... I'm going to get this to the right size here. But actually an instruction to sergeant from the COTR and... Boy, it must be in two. Yeah, it must be in two. It's at 1408 where it's... The contracting officer's representative there specifically states, Rick, I'm working on locating the asbestos. This was on November 10th, 2020. An important note that's been missed in all of this is that my colleague stated that sergeant didn't do anything. Sergeant alerted the contracting staff the literal day after the notice to proceed that there were discrepancies in the contract and what it found on site, which indicates pre-award reliance. But at 1408, it says, Rick, I'm still working on locating the asbestos-containing pipe installation and service bays. I have found some of the locations on the upper floors, but I need to locate the rest. We have some reports that give locations, but I need help from our safety department to sort out exactly where these elbows are located. I'm hoping to meet with them this week and sort this out. Is it acceptable to have the RFI due on Tuesday, 11-17-20? This is the contracting officer going back to sergeant with more than just, hey, we're doing you a favor. This is the contracting officer, the contracting officer's representative, the lead general engineer suggesting to sergeant that this is what must happen. That's all. Thank you. Appreciate it.